Filed 4/26/23  P. v. Stringer CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079595 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD266418) |
| IRA ALEXANDER STRINGER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederick Maguire, Judge.  Affirmed with instructions.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General for Plaintiff and Respondent.

# I

# INTRODUCTION

Ira Alexander Stringer committed several armed kidnappings, carjackings, and assaults against multiple victims including a 16-year old minor and a 79-year old woman. A jury found Stringer guilty of numerous kidnapping, carjacking, assault, robbery, and firearm-related offenses and he admitted two prior strike convictions within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12).[1] Thereafter, the trial court sentenced him to prison for an aggregate term of life without the possibility of parole, plus 87 years to life.

In a prior appeal, we reversed two of Stringer's aggravated kidnapping convictions due to instructional error and two of his simple kidnapping convictions, which were lesser included offenses of his other crimes. (*People v. Stringer* (2019) 41 Cal.App.5th 974, 981–988 (*Stringer*).) We affirmed the remainder of the judgment and remanded the matter for the People to decide whether to retry Stringer on the aggravated kidnapping counts. (*Id.* at pp. 988–993.) The People elected not to retry the counts at issue, so the matter proceeded directly to resentencing. At resentencing, the trial court denied a defense motion to strike the two prior strikes under section 1385. Then, it resentenced Stringer to prison for an aggregate term of 75 years to life, plus 42 years.

Stringer appeals the judgment following resentencing and argues the court abused its discretion by denying his motion to strike the prior strikes. According to Stringer, the court erred because it gave insufficient consideration to the remoteness of his prior strikes, as well as his background, character, and prospects. He also contends the abstract of

---

1    Further undesignated statutory references are to the Penal Code.

judgment contains a clerical error because the court imposed a concurrent sentence for count 6 (one of the surviving aggravated kidnapping convictions); however, both the "concurrent" and "consecutive" boxes for count 6 are checked on the abstract of judgment.

Further, the parties submitted supplemental briefs identifying additional clerical errors in the abstract of judgment and the minute order from the resentencing hearing. The People correctly assert that the abstract of judgment does not accurately reflect that the trial court imposed five-year prior serious felony sentencing enhancements for count 5 and count 6. On a related note, Stringer properly acknowledges that the minute order for the resentencing proceeding inaccurately states that the trial court struck the five-year prior serious felony sentencing enhancement for count 6.

We reject Stringer's claim that the trial court erred when it denied his motion to strike the prior strikes. However, we agree with the parties that the abstract of judgment and the minute order for the resentencing proceeding contain multiple clerical errors in need of correction. Therefore, we affirm the judgment, and we instruct the trial court: (1) to amend the abstract of judgment to accurately reflect that the sentence for count 6 runs concurrent to the sentence for count 5; (2) to amend the abstract of judgment to accurately reflect that the court imposed prior serious felony sentencing enhancements for count 5 and count 6; and (3) to amend the minute order from the resentencing proceeding to accurately reflect that the court did not strike the prior serious felony sentencing enhancement for count 6; rather, it imposed the prior serious felony sentencing enhancement for count 6 and ran the entire sentence for count 6 concurrent with the sentence for count 5.

II

BACKGROUND

1. *Factual Background*

The following factual background is taken from this court's prior opinion in *Stringer, supra*, 41 Cal.App.5th 974.

"On December 23, 2015, Stringer approached an adult baseball coach giving a batting lesson to a 16-year-old student at a baseball cage and pulled out a firearm. He held the coach and the student at gunpoint and directed them to the coach's nearby vehicle. Stringer sat in the backseat and ordered the coach into the driver's seat and the student into the passenger seat. The coach implored Stringer to take their cell phones, their money, and the vehicle, and not to hurt them. Stringer replied, 'Well, when this is over I'll get your ID and I'll take the cash.' Stringer then threatened he would kill his captives if they did 'anything stupid,' and ordered the coach to drive.

"Stringer instructed the coach to drive east towards a remote area of the county and the coach complied. During the drive, Stringer pulled a hood over his head and put a bandana over the lower half of his face. He appeared frantic, as though he were running away from someone, and told the victims he was affiliated with the Hell's Angels gang, had been in a gun fight, and 'just needed to get away.' He repeatedly told the victims not to do 'anything stupid' or he would kill them. He also asked them for their names and identification cards so he would know where to find them if they 'got him in trouble.'

"Stringer informed the victims he intended to leave them at a friend's house and take their money, their cell phones, and the vehicle. However, as they drove further into the remote region of the county, the coach grew fearful that Stringer intended to kill them. Therefore, he abruptly veered the still-moving vehicle into a mound of dirt, lunged into the backseat, and grabbed Stringer's wrist to try to wrest control of the firearm from him. Stringer fired three shots during the struggle, but none of them struck the vehicle's occupants. The coach eventually pried the firearm away from Stringer.

4

"Two passing vehicles stopped at the scene of the crash, picked up the victims, and drove them to safety. Stringer approached a third vehicle, which was occupied by a 79-year-old driver. Stringer had blood on him and claimed he needed medical assistance. Therefore, the driver permitted him to enter her vehicle. After entering the vehicle, however, Stringer implied he had a firearm, ordered the driver to 'get [him] off this hill,' and threatened her not to 'do anything stupid like the last guy.' After driving for some distance, the vehicle reached a busy intersection and the driver escaped to safety by opening her door and rolling out of the vehicle. Stringer took the vehicle, which he later abandoned, and returned to the area where the kidnapping began.

"Three days later, Stringer entered a convenience store elsewhere in San Diego County, pointed a shotgun at the store clerk, and demanded gasoline for his vehicle. The clerk authorized and pumped $20 worth of gasoline for Stringer, who drove away without paying. Police arrested Stringer that evening after a high-speed pursuit and standoff.

"In connection with these incidents, Stringer was charged by amended information with two counts of kidnapping for ransom, reward, or extortion, or to exact money or property from another person (§ 209, subd. (a); counts 1 and 2), two counts of kidnapping to commit robbery (§ 209, subd. (b)(1); counts 3 and 4), three counts of kidnapping to facilitate carjacking (§ 209.5, subd. (a); counts 5, 6, and 15), three counts of carjacking (§ 215, subd. (a); counts 7, 8, and 16), three counts of simple kidnapping (§ 207, subd. (a); counts 9, 10, and 17), two counts of assault with a firearm (§ 245, subd. (a)(2); counts 11 and 12), one count of child endangerment (§ 273a, subd. (a); count 13), two counts of felony possession of a firearm (§ 29800, subd. (a)(1); counts 14 and 19), and one count of robbery (§ 211; count 18).

"The amended information alleged Stringer used a firearm in the commission of counts 1 through 10 and 18 (§ 12022.53, subd. (b)), discharged a firearm in the commission of counts 1 through 10 (§ 12022.53, subd. (c)), and used a firearm in the commission of counts 11 through 13 (§ 12022.5, subd. (a)). It alleged he committed counts 1 and 2 in a manner that exposed the victims (the baseball coach and student) to a substantial

5

likelihood of death (§ 209, subd. (a)), and committed counts 15 through 17 against a victim (the 79-year-old driver) who was 65 years of age or older (§ 667.9, subd. (a)). Further, it alleged Stringer was previously convicted of a serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and two strikes (§§ 667, subds. (b)–(i), 668, 1170.12).

"The jury found Stringer guilty of counts 1 through 2, 5 through 6, 9 through 15, and 18 through 19, found Stringer not guilty of counts 3 through 4, and did not return verdicts on the remaining counts, which were lesser included offenses. Stringer admitted the truth of the prior convictions and the jury returned true findings on all other enhancement allegations attached to the offenses for which he was found guilty, except the allegations that he discharged a firearm in the commission of counts 1 through 2, 5 through 6 and 9 through 10. The court sentenced Stringer to life in prison without the possibility of parole, plus an additional 87 years to life."

(*Stringer, supra*, 41 Cal.App.5th at pp. 979–981, subheading omitted.)

Stringer appealed and our court reversed two of the aggravated kidnapping convictions (counts 1 and 2) for instructional error, as well as the two simple kidnapping convictions (counts 9 and 10), which were lesser included offenses of other aggravated kidnapping offenses (counts 5 and 6). (*Stringer, supra*, 41 Cal.App.5th at pp. 981–988.) We affirmed the remainder of the judgment and remanded the matter so the People could elect whether to retry Stringer on the aggravated kidnapping convictions we reversed due to instructional error. (*Id.* at p. 993.) The People elected to proceed directly to resentencing without retrying Stringer.

2. *Motion to Strike*

Prior to resentencing, Stringer moved to strike the two prior strikes, the prior serious felonies, and the firearm use enhancements under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. He

6

argued the court should strike the priors and the enhancements because: (1) no victims died or suffered great bodily injury when he committed the present offenses; (2) the prior strikes were 20 years old; (3) after he was placed on parole for the prior strikes, he was not convicted of a felony for seven years; (4) prior to his most recent arrest, he was employed and he cared for his youngest child; (5) he suffered trauma as a minor, including the death of his father, sexual and physical abuse at the hands of his step-father, and substance abuse issues that still persist; (6) his health and physical abilities deteriorated after his latest arrest; and (7) he likely would be incarcerated for the remainder of his natural life regardless of whether the court struck the priors and the enhancements.

The trial court struck the prior serious felonies for all but two counts (counts 5 and 6), but in all other respects it denied Stringer's motion. In denying the motion to strike the prior strikes, the court stated Stringer was "the poster child for the [T]hree [S]trikes law." The court characterized Stringer's latest crime spree as "egregious" and "particularly dangerous and heinous," noting he deliberately tried to intimidate and terrorize his victims with a loaded firearm or the threat of a firearm.

The court also described Stringer's prior strikes—two robbery convictions—as "hellacious." According to the probation report, the prior strikes arose from a 1995 incident in which Stringer and two companions held a family hostage overnight at gunpoint, ransacked the family's home, emptied a safe containing $30,000 in savings bonds, forced the family to go to the bank the next day to withdraw even more money, and threatened to kill all of the family's relatives if they reported the incident to police. Further, when denying the motion to strike the prior strikes, the court stated it "didn't

7

see enough time elapsing" between the prior strikes and the current offenses "to say there was a change."

After denying the motion to strike the prior strikes, the court sentenced Stringer to prison for 75 years to life, plus 42 years, calculated as follows: for count 5, 25 years to life, plus 10 years for the related firearm enhancement and 5 years for the prior serious felony; for count 15, 25 years to life, plus 2 years for the related elderly victim enhancement; for count 18, 25 years to life, plus 10 years for the related firearm enhancement; and 15 years for charges in a separate criminal case originating in Orange County (case 15CF2904). For count 6, the court imposed a sentence of 25 years to life, plus 10 years for the related firearm enhancement and 5 years for the prior serious felony, which the court ran concurrently with the sentence for count 5. The court stayed punishment for counts 11, 12, 13, 14, and 19 under section 654.

## III

## DISCUSSION

1. *The Trial Court Properly Exercised its Sentencing Discretion*

On appeal, Stringer argues the trial court abused its discretion when denying his motion to strike the prior strikes under section 1385. For reasons we will explain, we disagree with Stringer.

The Three Strikes law "is designed to 'punish repeat criminal offenders severely' and 'drastically curtail a sentencing court's ability to reduce the severity of a sentence by eliminating alternatives to prison incarceration.' [Citation.] To that end, the law mandates the imposition of a 25-year-to-life prison sentence in cases–such as this one–where the defendant is convicted of a serious or violent felony and has previously been convicted of two such felonies. [Citations.] In other words, 'If, after having suffered two qualifying

8

felony convictions, an offender commits a third qualifying felony, the Three Strikes law presumes he or she is incorrigible and requires a life sentence.' " (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1104–1105 (*Mayfield*).)

"That doesn't mean trial courts are powerless to deviate from the Three Strikes law." (*Mayfield, supra*, 50 Cal.App.5th at p. 1105.) Section 1385, subdivision (a), provides that a sentencing court may, on its own motion or on the application of the prosecuting attorney, order an action to be dismissed "in furtherance of justice." This statutory provision grants a court the authority, on its own motion and in the interests of justice, to strike prior serious or violent felony convictions—i.e., strikes—in cases brought under the Three Strikes law. (*Romero, supra*, 13 Cal.4th at pp. 529–530.) When deciding whether to strike one or more prior strikes, a sentencing court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects," the defendant may be deemed outside the spirit of the Three Strikes law scheme, "in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

We review a court's decision not to strike a prior strike for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374–376 (*Carmony*).) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on

9

review." ' [Citations.]  Second, a ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at pp. 376–377.)

A court's determination not to strike a prior strike constitutes an abuse of discretion only "in limited circumstances."  (*Carmony, supra*, 33 Cal.4th at p. 378.)  " '[T]he sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case.  [Citation.] [¶] But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations.  [Citation.]  Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation].  Because the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary."  (*Ibid*.)

The current case does not present extraordinary circumstances suggesting that the trial court's exercise of its discretion was so irrational or arbitrary that no reasonable person could agree with it.  In declining to strike

the prior strikes, the court relied in part on the nature and severity of the present offenses. It described the offenses as "egregious" crimes arising out a "particularly dangerous and heinous series of events." The trial court's characterization of the crimes is amply supported by the record. Indeed, Stringer kidnapped an innocent minor and his baseball coach at gunpoint and threatened to kill them; he lied to and carjacked an elderly Good Samaritan, who escaped to safety only by rolling out of her vehicle; and he pointed a shotgun directly at a store clerk before robbing him. These were odious and terrifying crimes against vulnerable and unsuspecting victims—crimes that easily could have turned deadly at any moment.

Stringer notes that he did not kill his victims or cause them life-threatening injuries—likely due to the heroic intervening actions of the baseball coach. But that fact alone does not remove Stringer from the ambit of the Three Strikes law, since "the Three Strikes law does not require physical injury." (*People v. Anderson* (2019) 42 Cal.App.5th 780, 786 [court properly declined to strike prior strikes even though the victims suffered no physical injury].) In any event, Stringer *did* cause physical injury. During resentencing, the father of the minor victim testified that his son's baseball coach required numerous operations for injuries he suffered from the car crash that occurred during Stringer's crime spree. And, in the words of the court, Stringer undoubtedly "scared the daylights" out of his victims and came within "inches" of shooting the minor victim. The trial court properly took the seriousness of the present offenses into account when it declined to strike the prior strikes. (*Williams, supra*, 17 Cal.4th at p. 161 ["preponderant weight must be accorded to ... the nature and circumstances of the defendant's present felonies"]; see also, e.g., *People v. Salazar* (2022) 80

11

Cal.App.5th 453, 460 [failure to strike prior strikes was not an abuse of discretion, in part, because "[t]he current crimes were serious"].)

The trial court also properly considered the severity of Stringer's prior strikes, which were imposed for crimes that the trial court accurately described as "nasty" and "hellacious." As stated in the probation report, the prior strikes stemmed from an alarming incident in which an armed Stringer and his companions took the members of a family hostage for several hours, robbed them, and threatened to have all of their relatives killed. The severity of Stringer's prior offenses and their similarities to the present offenses strongly counsel against a finding that the court abused its discretion by declining to strike the prior strikes. (*Williams, supra*, 17 Cal.4th at p. 161 [a sentencing court should consider the nature and circumstances of the prior strikes]; *People v. Leonard* (2014) 228 Cal.App.4th 465, 504 [rejecting claim that court "placed 'undue weight' on the seriousness of the prior conviction"].)

Stringer argues the trial court should have stricken the prior strikes because they were remote in time and he perpetrated them when he was just 25 years old. He notes that he committed his prior strikes in 1995, he was released from prison on parole in 2008, and he committed the present crimes in 2015. Thus, the prior strikes are 20 years old and seven years elapsed between his release on parole and the present offenses. In declining to strike the prior strikes, the court said it "didn't see enough time elapsing" between the prior strikes and the current offenses "to say there was a change."

We discern no abuse of discretion based on the alleged remoteness of the prior strikes. " '[A] prior conviction may be stricken if it is remote in time.' " (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390 (*Vasquez*).) But, " '[i]n analyzing whether a defendant's prior criminal conduct was "remote," a trial court should consider whether the defendant "was incarcerated a

12

substantial part of the intervening time and thus had little or no opportunity to commit" additional crimes.' " (*People v. Beasley* (2022) 81 Cal.App.5th 495, 501 (*Beasley*).)

Here, Stringer spent 13 years in prison for his prior strikes, during which time he had little or no opportunity to reoffend. Given this fact, the court reasonably declined to strike the 20-year old prior strikes based on their age. (*Beasley, supra*, 81 Cal.App.5th at p. 502 ["the 23 years between the last strike offense and the current offense cannot support dismissal of the strikes" because the defendant was incarcerated for 22 of those years]; see also *Vasquez, supra*, 72 Cal.App.5th at pp. 390–391 [court abused its discretion in striking prior strike where defendant was imprisoned for 13 of 16 years that elapsed between prior robberies and subsequent ones].)

Nor are we persuaded that the court abused its discretion simply because Stringer did not commit a felony until seven years after his release from incarceration for his prior strikes. Seven years is not an especially lengthy period of time to remain felony-free. Additionally, Stringer did not live a crime-free life during that timeframe. Indeed, the probation report states he was found guilty of misdemeanor assault causing bodily injury for an incident that took place in 2011, three years after his release from incarceration. And, of course, he subsequently went on to commit the present crimes, which share many of the same appalling qualities as his prior strikes—namely, the use of firearms to take victims hostage, terrorize them, and steal from them. "[O]lder strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways." (*Mayfield, supra*, 50 Cal.App.5th at p. 1107.) On the record before us, we conclude the trial court did not abuse its discretion in declining to find

13

that Stringer's "prior convictions served as a 'pivot point' for changing his ways." (*Vasquez, supra*, 72 Cal.App.5th at pp. 390–391.)

Alternatively, Stringer asserts the court erred because it gave little or no consideration to his background, character, and prospects, including his substance abuse issues and the traumas he experienced during his childhood. On the contrary, the record discloses that, during resentencing, Stringer's counsel discussed his childhood traumas and substance abuse issues at length. Further, the court itself opined on the effects methamphetamine use can have on a person like Stringer. But, after weighing *all* pertinent circumstances—including the nature and severity of the present offenses and the prior strikes—the court impliedly found that these considerations did not place this action into the extraordinary set of cases in which the offender's prior strikes should be stricken. We cannot fault the court in reaching this finding, let alone conclude that it abused its discretion in doing so.

In short, the trial court thoughtfully and impartially weighed and considered the current offenses, the prior strikes, and Stringer's background, character, and prospects. After doing so, it reasonably declined to strike the prior strikes based on all these factors. The trial court acted well within the bounds of its discretion in denying the motion to strike the prior strikes.[2]

2. *The Abstract of Judgment and the Resentencing Minute Order Contain Clerical Errors*

During resentencing, the court orally sentenced Stringer on count 6 to a term of 25 years to life, plus 10 years for the related firearm enhancement and 5 years for the prior serious felony, a sentence the court ran concurrently

---

[2] Because we conclude that the court properly denied the motion to strike the prior strikes, it is unnecessary for us to consider Stringer's argument that new sentencing legislation (Senate Bill No. 81) would apply if we were to remand the matter for a new resentencing proceeding.

14

with the sentence for count 5.  However, the portion of the abstract of judgment relating to count 6 includes an "X" marking in the box designating the sentence as "concurrent" *and* an "X" marking in the box designating the sentence as "consecutive."  Stringer asserts the "X" marking in the "consecutive" box is a clerical error in need of correction.  The People agree the "X" marking in the "consecutive" box for count 6 is a clerical error and they do not oppose Stringer's request for a correction.

We agree the abstract of judgment contains a clerical error in the form of an "X" marking in the "consecutive" box for count 6.  We instruct the trial court to correct the abstract of judgment so that it conforms to the oral pronouncement of judgment, which designates the sentence for count 6 as concurrent to the sentence for count 5—i.e., we instruct the court to remove the "X" marking from the "consecutive" box for count 6.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["Courts may correct clerical errors at any time, and appellate courts ... have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts."].)

Additionally, the People filed a supplemental brief noting that the abstract of judgment mistakenly omits the five-year prior serious felony sentencing enhancements imposed by the trial court for count 5 and count 6.  Stringer does not dispute that the court imposed these five-year prior serious felony enhancements, nor does he dispute that the abstract of judgment mistakenly omits them.  We instruct the trial court to correct the abstract of judgment so that it accurately reflects that the court imposed prior serious felony enhancements for count 5 and count 6.

Finally, Stringer filed a supplemental brief candidly alerting us to an additional clerical error in the minute order for the resentencing proceeding, dated October 8, 2021.  The minute order erroneously states that the trial

15

court struck the prior serious felony enhancement for count 6. As just noted, the court imposed the prior serious felony enhancement for count 6, rather than striking it. The trial court is directed to amend the minute order to reflect that the court imposed the prior serious felony enhancement for count 6 and then ran the entire sentence for count 6 concurrent with the sentence for count 5.[3]

## IV

## DISPOSITION

The judgment is affirmed. The trial court is instructed: (1) to amend the abstract of judgment to accurately reflect that the sentence for count 6 runs concurrent to the sentence for count 5; (2) to amend the abstract of judgment to accurately reflect that the court imposed prior serious felony sentencing enhancements for count 5 and count 6; and (3) to amend the minute order for the resentencing proceeding, dated October 8, 2021, to accurately reflect that the court did not strike the prior serious felony sentencing enhancement for count 6. The trial court is further directed to

---

[3]    In his supplemental brief, Stringer also asks us to order the trial court to modify its abstracts of judgment to reflect updated custody credit calculations that the court issued on June 13, 2022 (in case SCD266418, originating in San Diego County) and August 10, 2022 (in case 15CF2904, originating in Orange County). Because Stringer does not direct us to any specific custody credit calculation errors in the most recent abstracts of judgment, we decline to order any particular amendments to the abstracts of judgment. However, it goes without saying that the trial court should include its latest custody credit calculations in its amended abstracts of judgment, if it has not done so already.

forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.


                                                          McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DATO, J.